REQUESTED BY: Senator Howard Lamb Nebraska State Legislature State Capitol, Room 2004 Lincoln, NE 68509
Dear Senator Lamb:
You have requested our opinion regarding whether the provisions of LB 38 would withstand constitutional challenge. LB 38 generally provides that each owner of real property in the state shall be entitled to receive a ten per cent rebate for all property taxes paid. Section 3 of the bill provides the Nebraska Department of Revenue is to calculate the rebate due and remit this amount to the owner of the real property.
Article VIII, Section 4 of the Nebraska Constitution provides, in pertinent part:
 Except as to tax and assessment charges against real property remaining delinquent and unpaid for a period of fifteen years or longer, the Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever; . . . . (Emphasis added).
In Steinacher v. Swanson, 131 Neb. 439, 268 N.W. 317
(1936), the Nebraska Supreme Court, construing the prohibition contained in Article VIII, Section 4, stated:
 It is quite apparent that the framers of the Constitution of 1875, the one first containing this provision, and the members of all subsequent constitutional conventions, have been imbued with the idea that all taxpayers are entitled to the same treatment by the government they support. For this reason they have expressly written into our Constitution that the legislature not only shall have no power to release or discharge any one from the payment of his share of taxes, but a commutation for taxes in any form whatever is prohibited. . . . Clearly, under this constitutional provision, the legislature cannot reduce the amount of the tax, extend the time of payment, or in any manner change the method of payment.
Id. at 446, 268 N.W. at 321.
In County of Lancaster v. Trimble, 33 Neb. 121,49 N.W. 938 (1891), the court held a statute permitting counties to purchase tax sales certificates and foreclose them, provided that no action could be brought unless the amount due exceeded $200, violated the above-quoted constitutional provision. The court in Trimble stated:
 The legislature is without power to release any inhabitant or corporation from his or its proportionate share of taxes, nor can it confer such authority upon county commissioners. It has authorized them to purchase real estate at tax sale, but has provided for the foreclosure of tax certificates in their hands only when the amount due thereon exceeds a specified sum. . . . The legislature is powerless to confer such authority. It cannot do indirectly what the Constitution prohibits it from doing directly; that is clear. (Wood v. Helmer, 10 Neb. 65, 68.)
Id. at 447, 49 N.W. at 939.
The ten per cent rebate on the amount of real property taxes paid provided by LB 38 would, in effect, constitute a reduction in real property taxes paid to all owners of real property in the state. Arguably, the rebate provided under LB 38 could be viewed as a form of commutation of taxes by the Legislature in violation of Article VIII, Section 4. It could therefore be contended the procedure established under LB 38 would allow the Legislature to accomplish indirectly what it could not do directly, in view of the prohibition in Article VIII, Section 4.
On the other hand, the providing of tax relief through the payment of a rebate of this nature does not seem to clearly constitute a release, discharge, or cummulation of taxes as contemplated under Article VIII, Section 4.
While we express some reservation as to the Legislature's authority to provide tax relief to real property owners in this manner, we cannot conclude the rebate provided by LB 38 is clearly violative of this constitutional provision.
An additional constitutional question raised by LB 38 concerns Article XIII, Section 3, which provides, in pertinent part: `The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, . . . .'
The Nebraska Supreme Court has interpreted the prohibition in Article XIII, Section 3, to prevent the state, or any political subdivision thereof, from extending its credit to private enterprises. United Community Services v. OmahaNational Bank, 162 Neb. 786, 77 N.W.2d 576 (1956); Stateex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269
(1957). In determining whether legislation providing for the expenditure of public funds is constitutionally impermissible under Article XIII, Section 3, the crucial inquiry is whether the act in question serves a public purpose.
Lenstrom v. Thone, 209 Neb. 783, 311 N.W.2d 884
(1981), involved the issue of the constitutionality of a statutory scheme establishing a scholarship award program providing financial assistance to eligible undergraduate state residents to receive educational services in public and private postsecondary educational institutions in the state. The court held the scholarship program was enacted to serve a public purpose, and thus did not violate the provisions of Article XIII, Section 3. Discussing the requirement that an expenditure of public funds constitute a public use or purpose, the court in Lenstrom stated:
 It is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a statute invalid because its object is not a public purpose, the absence of public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind. Chase v. County of Douglas, 195 Neb. 838, 241 N.W.2d 334 (1976).
Id. at 789-90, 311 N.W.2d at 888.
The defendants in Lenstrom contended the statutory scheme creating the scholarship award program violated Article XIII, Section 3, on the basis that the program constituted a `gift' of public funds. The court summarily rejected this argument, stating:
 If article XIII, § 3, were extended to include `gifts' for public purposes, then all state welfare programs and many others would be unconstitutional. We find no authority which supports the defendants' position with reference to article XIII, § 3.
Id. at 792, 311 N.W.2d at 889.
It has been recognized that the public interest is promoted, and a public purpose served, by the provision of tax relief. See, Felder v. City of Portsmouth, 114 N.H. 573,324 A.2d 708 (1974). The public purpose to be served through the enactment of LB 38 would be the general public interest in relieving the tax burden which has been placed on real property owners in the state. As the court indicated in Lenstrom, the purpose of the prohibition in Article XIII, Section 3, is to prevent the state from extending its credit to private enterprises; it does not prohibit expenditures made in furtherance of a public purpose.
We would point out, however, that LB 38 does not contain any legislative declaration or findings regarding the public purposes to be served by the bill. While it is not required that a legislative act which provides for the expenditure of public funds contain an express declaration of public purpose, State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979), such a declaration, and legislative findings to that effect, would be desirable to clearly express the Legislature's intent. In any event, we cannot conclude the tax relief provided by LB 38 is invalid based on the `absence of a public purpose' which is `so clear and palpable as to be immediately perceptible to the reasonable mind.'
Aside from the question of the constitutional validity of LB 38, we also feel constrained to note that we can envision various administrative problems which could arise under its present provisions. Rather than attempting to outline such concerns in detail, we recommend that you seek the advice of the Department of Revenue, the agency which would bear the responsibility of administering the rebate program, regarding any administrative problems posed by the bill.
In summary, it is our opinion that, while we believe some questions may exist as to the constitutionality of the rebate system established under LB 38, we cannot affirmatively conclude that the bill would clearly violate any constitutional provision.
Very truly yours,
A. EUGENE CRUMP Deputy Attorney General
L. Jay Bartel Assistant Attorney General